IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

TERRY WAYNE HENSON,

    Petitioner,

v.                                                                                                       No. 1:22-cv-01275-JDB-jay

WARDEN ROBERT ADAMS, JR.,

    Respondent.

ORDER DENYING § 2254 PETITION, DENYING A CERTIFICATE OF APPEALABILITY,
CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH, AND DENYING LEAVE TO
APPEAL IN FORMA PAUPERIS

Before the Court is the habeas corpus petition filed by Petitioner, Terry Wayne Henson, ("Petitioner" or "Henson"), pursuant to 28 U.S.C. § 2254. (Docket Entry ("D.E.") 1 (the "§ 2254 Petition").) For the following reasons, the § 2254 Petition is DENIED.

I.    STATE COURT PROCEDURAL BACKGROUND

On June 12, 2017, a McNairy County grand jury returned an indictment charging Henson with two counts of rape of a child, one count of incest, and two counts of violating the sex offender registry restrictions. (D.E. 11-1 at PageID 45-48.) Henson was represented by attorney, Ross Mitchell, in the trial court and on direct appeal. (D.E. 1 at PageID 5-6; D.E. 11-1 at PageID 69.)

On October 9, 2018, a jury convicted Henson on the two rape of a child counts, the incest count and one of the violations of the sex offender registry restrictions counts.[1] (D.E. 11-1 at PageID 128-31.) Henson was sentenced to an aggregate sentence of thirty-five years at one hundred percent on those charges. (*Id.* at PageID 142-46.)

---

[1] The State dismissed the other count of violating the sex offender registry restrictions before Henson's trial. See *State v. Henson*, No. W2019-00462-CCA-R3-CD, 2020 WL 6317113, at *1 (Tenn. Crim. App. Oct. 28, 2020).

On November 28, 2018, Henson filed a motion for a new trial, arguing that the State "did not prove that the offenses found in the indictment occurred on or between the dates included in the indictment" and that the verdict was against the weight of the evidence presented. (*Id.* at PageID 147.) The trial court denied Henson's motion on February 12, 2019. (*Id.* at PageID 149.)

On March 13, 2019, Petitioner appealed. (*Id.* at PageID 151.) On appeal, he argued that the verdict was contrary to state law "in that the state failed to prove that the offenses oc[c]urred on or between the dates included in the indictment" and that the verdict was against the weight of the evidence presented. (D.E. 11-7 at PageID 478.) On October 28, 2020, the Tennessee Court of Criminal Appeals ("TCCA") affirmed the trial court's judgments. *State v. Henson*, No. W2019-00462-CCA-R3-CD, 2020 WL 6317113, at *1 (Tenn. Crim. App. Oct. 28, 2020); (D.E. 11-9 at PageID 513.) On December 23, 2020, Henson sought discretionary review. (D.E. 11-11.) On March 23, 2021, the Tennessee Supreme Court ("TSC") denied Petitioner's application for permission to appeal. (D.E. 11-13.)

Henson then filed a pro se Post-Conviction Petition pursuant to T.C.A. § 40-30-101 et seq. (D.E. 11-14 at PageID 546-55.) He asserted four grounds of ineffective assistance of counsel: (1) counsel failed to have an investigator interview the two victims prior to trial; (2) counsel did not conduct a thorough pretrial investigation; (3) did not retain a medical expert to conduct rape examinations on the two victims; and (4) failed to conduct meaningful plea negotiations with the State. (*Id.* at PageID 550.) Henson filed a pro se amended petition on June 25, 2021, raising the same four grounds of ineffective assistance as in his original petition. (*Id.* at PageID 559-68.)

On July 7, 2021, the post-conviction court appointed attorney, Rickey Griggs, to represent Henson. (*Id.* at PageID 572.) On August 9, 2021, Petitioner, through counsel, filed notice that "no amended petition will be filed in this matter." (*Id.* at PageID 574.)

2

The post-conviction court held an evidentiary hearing on October 25, 2021, (D.E. 11-15), and on November 4, 2021, denied relief. (D.E. 11-14 at PageID 581-84.) Henson appealed. (*Id.* at PageID 588.) On post-conviction appeal, Petitioner asserted only that "the post-conviction court erred when it denied his petition" because Mitchell "was ineffective for failing to interview potential witnesses before trial and for failing to call one of these potential witnesses to testify at trial." *Henson v. State*, No. W2021-01432-CCA-R3-PC, 2022 WL 4115375, at *5 (Tenn. Crim. App. Sept. 9, 2022); (D.E. 11-18 at PageID 684.) On September 9, 2022, the TCCA affirmed the denial of post-conviction relief. *Henson*, 2022 WL 4115375, at *1. Henson did not seek permission to appeal to the TSC.

II.   EVIDENCE

On direct appeal, the TCCA summarized the evidence presented at trial:

This case arises out of the Defendant's sexual abuse of his eight-year-old biological daughter, S.M., and S.M.'s nine-year-old half-sister, A.G.H., during an October weekend the two girls spent with the Defendant at his house trailer just prior to Halloween of 2016. The girls reported the abuse to their sister-in-law immediately after the weekend visit and a short time later to a law enforcement officer and a sexual assault nurse examiner. The Defendant was subsequently indicted by the McNairy County Grand Jury with two counts of rape of a child, one count of incest, and two counts of violation of the sex offender registry requirements. The State, however, dismissed one of the counts of violation of the sex offender registry prior to the Defendant's October 9, 2018 trial.

The State's first witness at trial was Officer Dena Heathcock of the Jackson Police Department, formerly employed as a patrol officer with the McNairy County Sheriff's Department, who testified that on October 30, 2016, while in her former position, she was dispatched to meet with the victims and their mother at the courthouse/jail complex in response to a "[f]ondling" call. She said she took the victims' statements and noted in her report that A.G.H. had a bruise on her right breast. On cross-examination, she acknowledged that she could not recall any specific details about the bruise. On redirect examination, she recalled that there was one other person, "Brandi," present with the victims and their mother when she met with them at the complex.

Brandi Miller, the victims' former sister-in-law, testified that A.G.H. made a revelation to her about sexual abuse after they picked her up from her visit with the Defendant. She stated that they immediately reported the abuse to law enforcement, driving first to the Hardin County jailhouse and from there to the

3

McNairy County Courthouse complex to speak with a female officer. She was present when A.G.H. showed the officer her breast, and she observed that the breast was red. On cross-examination, she denied that she coached the victims on what to say to the officer.

Sexual Assault Nurse Examiner Mary Jane Cole, who examined both victims in the early morning hours of October 31, 2016, testified that S.M. reported that her father had "pinched [her] butt" and that he "puts his nu-nu, his bad part, in [her] nu-nu." S.M. showed her what she meant by "nu-nu" by pointing to the crotch area of a toy and to her own crotch area. Her physical examination of S.M., which involved gently pulling apart the outer lips, or labia majora, of S.M.'s vulva, revealed mild redness in S.M.'s external genitalia.

Nurse Cole testified that A.G.H. reported that the Defendant: "put his thingy in [her] butt"; "put his thingy to [her] front part," which hurt; put his finger in her "front private"; put his hand on her breast, which caused her pain; and kissed her on the mouth. [86] She asked what A.G.H. meant by the Defendant putting his finger in her private, and A.G.H. told her that the Defendant's fingers moved "in and out[.]" [87, line 1] Her physical examination of A.G.H. was limited due to A.G.H.'s extreme discomfort and pain, even after she applied Lidocaine jelly, but she was able to observe "[s]evere redness throughout . . . [A.G.H.'s] whole vestibule, around the urethra, around the hymenal tissue, in the labia minora, on the outside, the labia majora."

On cross-examination, she testified that she did not see any acute injury on S.M. and saw no noticeable redness on or around A.G.H.'s buttocks. She said she collected two buccal swabs from S.M., two buccal swabs from A.G.H., two swabs from around the outside of A.G.H.'s anus, and two swabs from A.G.H.'s labia majora. She had no information of whether any foreign DNA was found on any of the swabs. She acknowledged that either poor hygiene or an infection could account for the redness in A.G.H.'s genital area but said that the child's mother gave no indication that A.G.H. had any prior issues with irritation of her genitalia. She acknowledged that she was unable to determine whether penetration had occurred in either child.

Ten-year-old S.M. testified that the Defendant, her father, touched her in a bad way one weekend when she was staying with him at his house and watching the movie "Bad Teacher." Referring to the Defendant's penis as his "bad part," she said that the Defendant, who was lying down on the couch, unzipped his pants, pulled out his penis, and moved her so that she was sitting on top of his penis. The Defendant did not remove her clothes but he pushed his penis several times against her buttocks. Although she was not clear in her testimony, she indicated that the Defendant either pushed his penis through the leg opening of her panties into her vagina or her anus or pushed his penis, covered by the material of her panties, into her vagina or her anus, testifying, "My clothes was on but you can feel it go through." She further testified that it felt as if the Defendant's penis was inside of her and that it was "coming into [her] butt." His penis felt "[l]ike a mountain," and the Defendant was "moving everywhere." The Defendant's penis hurt her and she

4

asked him to stop, but he continued. She felt "[a] little bit of pee" coming out of his penis and "into [her] butt" before the Defendant finally stopped. She said she told her sister-in-law, Brandi, about what the Defendant had done and that she later went to the Carl Perkins Center for the Prevention of Child Abuse where a woman examined her.

On cross-examination, S.M. testified that the Defendant removed both her t-shirt and her pants, leaving her underwear on. She reiterated that the incident happened at the Defendant's house. She could not recall what time of day it occurred or how old she had been at the time. She said no one else was in the home at the time.

On redirect examination, S.M. testified that a similar incident happened more than once and agreed that she might have been confusing the two incidents when she testified on direct examination that her clothes were on and on cross-examination that her clothes were off. She also agreed that her sister was at home on some of the occasions when "bad things happened" at the Defendant's home.

Lieutenant Brad Johnson of the McNairy County Sheriff's Department identified a certified copy of the Defendant's Georgia conviction for child molestation, as well as the "Tennessee Sexual Offender/Violent Sexual Offender Registration/Verification/Tracking Form, signed by the Defendant on August 8, 2016, in which the Defendant acknowledged receipt of the registry rules he was required to follow, including the prohibition against being alone with a minor.

Eleven-year-old A.G.H. testified that on an overnight visit with the Defendant at his house trailer in Michie just before Halloween, the Defendant told her to go into S.M.'s bedroom, where he pushed her down on the bed, pulled down her pants, and touched her breast and her private part with his finger. She said the Defendant put his fingers inside her, which made her feel "awkward" and "weird." The Defendant then unzipped his pants, pulled out his private part, pushed it inside her private part, and rubbed against her, which hurt her. The Defendant also tried to put his private part inside her buttocks, but she squeezed her buttocks together to stop him.

A.G.H. testified that she asked the Defendant to stop, but he continued until his girlfriend, who was cooking in the kitchen, called for him to "come and eat." She said S.M. was playing with dolls in the living room at the time. She identified on anatomical drawings what she meant by her and the Defendant's respective private parts. She testified that the Defendant dropped her and S.M. off at the courthouse at about 8:30 p.m., where their mother and Brandi picked them up. When she got home, she told Brandi and her brother what had happened.

On cross-examination, A.G.H. testified that at the time of the incident, she was wearing leggings and no underwear because her underwear was dirty. She said the Defendant pulled her leggings down to her knees and unzipped his pants. The Defendant was not wearing a shirt or any underwear. The Defendant pinched her breast by sliding his arm underneath her shirt. She said the incident occurred in the evening approximately two years earlier, when she was nine. On redirect

5

examination, she testified that the incident happened on the same weekend in which she talked to a police officer and went to a hospital for a physical examination.

The victims' mother, called as a witness by the defense, testified that her romantic relationship with the Defendant had ended approximately three years before the date of trial. She acknowledged having told the judge in the general sessions court that she did not believe that the Defendant would harm the victims. She stated, however, that she now believed the victims' allegations. On cross-examination, she testified that although she did not believe the victims when she first learned of the abuse, she had immediately taken them to be interviewed by law enforcement and to the hospital for physical examinations.

The forty-nine-year-old Defendant testified that he had never been alone with A.G.H. and denied he had ever inappropriately touched either victim or behaved inappropriately around them. On cross-examination, he testified that he had been alone with S.M. and reiterated that he had never been alone with A.G.H., although he had been in the room with only A.G.H. and S.M. when S.M. was asleep.

Lynn Baker, owner of a construction company and the Defendant's employer, testified that he had observed that the victims appeared to be "crazy" about the Defendant. He described the Defendant as an excellent employee and said that the Defendant informed him of his Georgia criminal conviction on the day that he hired him.

*Henson*, 2020 WL 6317113, at *1-3 (footnote omitted).

### III. HABEAS PROCEEDINGS

Henson filed his pro se § 2254 Petition on December 12, 2022. (D.E. 1.) He alleges ineffective assistance of counsel and references the four grounds of alleged ineffective assistance he raised in his state post-conviction petition. (D.E. 1-1 at PageID 12-18.) On March 29, 2023, the Court ordered Respondent to respond to the § 2254 Petition and file the state court record. (D.E. 7.) On April 24, 2023, Respondent filed the state court record (D.E. 11) and a response to the § 2254 Petition (D.E. 12). Respondent argues that Henson's claims are unexhausted, procedurally defaulted, and lack merit. (*See* D.E. 12.) Petitioner has not filed a reply, and the time for him to do so has expired. (*See* D.E. 7.)

### IV. FEDERAL HABEAS REVIEW STANDARD

6

The statutory authority for federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under § 2254, habeas relief is available only if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The availability of federal habeas relief is further restricted where the petitioner's claim was "adjudicated on the merits" in the state courts. 28 U.S.C. § 2254(d). In that circumstance, the federal court may not grant relief unless the state court decision "'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court; or . . . 'involved an unreasonable application of' such law; or . . . 'was based on an unreasonable determination of the facts' in light of the record before the state court." *Harrington v. Richter*, 562 U.S. 86, 100 (2011) (citations omitted) (quoting 28 U.S.C. § 2254(d)(1)-(2)).

A state court's decision is contrary to federal law when it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or when "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at" an "opposite" result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). An unreasonable application of federal law occurs when the state court, having invoked the correct governing legal principle, "unreasonably applies the [principle] . . . to the facts of a prisoner's case." *Id.* at 409.

For purposes of § 2254(d)(2), a state court's "factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The Sixth Circuit construes § 2254(d)(2) in tandem with § 2254(e)(1) to require a presumption that the state court's factual determination is correct in the absence of clear and convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). A state court's

factual findings are therefore "only unreasonable where they are 'rebutted by clear and convincing evidence and do not have support in the record.'" *Moritz v. Woods*, 692 F. App'x 249, 254 (6th Cir. 2017) (internal quotation marks omitted) (quoting *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)).

Before a federal court will review the merits of a claim brought under § 2254, the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To be properly exhausted, a claim must be "fairly presented" through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999).

The exhaustion requirement works in tandem with the procedural-default rule, which generally bars federal habeas review of claims that were procedurally defaulted in the state courts. *Id.* at 848. A petitioner procedurally defaults his claim where he fails to properly exhaust available remedies (that is, fails to fairly present the claim through one complete round of the state's appellate review process), and he can no longer exhaust because a state procedural rule or set of rules have closed-off any "remaining state court avenue" for review of the claim on the merits. *Harris v. Booker*, 251 F. App'x 319, 322 (6th Cir. 2007). Procedural default also occurs where the state court "actually . . . relied on [a state] procedural bar as an independent basis for its disposition of the case." *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). To cause a procedural default, the state court's ruling must "rest[] on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citing *Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935); *Klinger v. Missouri*, 80 U.S. 257, 263 (1871)).

A petitioner will be entitled to federal court review of the merits of a claim that was procedurally defaulted if he demonstrates "cause for the default and actual prejudice as a result of

8

the alleged violation of federal law." *Id.* at 750. The ineffectiveness of post-conviction trial counsel may be cause to excuse the default of an ineffective-assistance-of-trial-counsel claim. *Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (citing *Martinez v. Ryan*, 566 U.S. 1, 14, 16-17 (2012)).

A petitioner may also overcome a procedural default by establishing a "gateway" claim of actual innocence. *Schlup v. Delo*, 513 U.S. 298, 315 (1995). To open the gateway, a prisoner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence— that was not presented at trial." *Id.* at 324. He must also show that, in light of the new evidence, "it is more likely than not that no reasonable juror would have convicted him." *Id.* at 327.

V. ANALYSIS

In his § 2254 Petition, Henson alleges ineffective assistance of counsel and references the four grounds of alleged ineffective assistance he raised in his state post-conviction petition. (D.E. 1-1 at PageID 12-18.) Those grounds are that counsel failed to: (1) have an investigator interview the two victims prior to trial; (2) conduct a thorough pretrial investigation; (3) retain a medical expert to conduct rape examinations on the two victims; and (4) conduct meaningful plea negotiations with the State. (D.E. 11-14 at PageID 550.)

A. Standard for Ineffective Assistance of Counsel Claims

A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on such a claim, a petitioner must demonstrate two elements: (1) "that counsel's performance was deficient"; and (2) "that the deficient performance prejudiced the defense." *Id.* at 687. "The benchmark for judging any claim of ineffectiveness

9

must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks and citation omitted).

An attorney's "strategic choices" are "virtually unchallengeable" if based on a "thorough investigation of law and facts relevant to plausible options." *Id.* at 690. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91.

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 693). Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

The deference to be accorded a state court decision under 28 U.S.C. § 2254(d) is magnified when a federal court reviews an ineffective assistance claim: "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable.

10

The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 105.

Because these claims were raised in the post-conviction proceedings, the Court will address the merits of these claims to the extent that they were exhausted.

        B.        Ground I: Failing to Interview the Two Victims

Henson asserts that trial counsel "failed to attempt to have an investigator interview the two victims prior to trial." (D.E. 1-1 at PageID 15.) According to Petitioner, these interviews "would have assisted counsel in the cross-examination of the victims at trial, and potentially revealed inconsistent statements of the victims, which could have been used to impeach the victims' testimony at trial." (*Id.*) He raised this claim in his state post-conviction petition and trial counsel testified at the post-conviction evidentiary hearing. *Henson*, 2022 WL 4115375, at *3.

On post-conviction appeal, the TCCA summarized the evidence about Mitchell:

> Counsel testified that the Petitioner retained him shortly after the Petitioner's arraignment. Counsel understood that the Petitioner alleged that he failed to have an investigator interview the two child witnesses. Counsel explained that both children had been forensically interviewed in a thorough manner. Counsel had a copy of that statement, and both girls testified at trial, giving him the opportunity to cross-examine them. Counsel said that he did not believe that any further pretrial interviews would have changed his cross-examination. Counsel additionally said that, as a matter of strategy, he did not want the children to rehearse their statements before trial, given that so much time had passed between the incident and the trial.

*Id.* On cross-examination, the attorney testified that "his trial strategy included attempting to get the victims to testify the incident occurred on the date in the indictment that they were not with the Petitioner." *Id.* at *4.

Respondent argues that Henson has procedurally defaulted this claim for relief because he "abandoned the issue on appeal" and, therefore, "fail[ed] to fully present it for state review." (D.E. 12 at PageID 711.) On post-conviction appeal, Petitioner asserted only that "the post-conviction court erred when it denied his petition" because Mitchell "was ineffective for failing to interview

11

potential witnesses before trial and for failing to call one of these potential witnesses to testify at trial." *Henson*, 2022 WL 4115375, at *5. At no time on post-conviction appeal did Henson challenge the post-conviction court's conclusion that Mitchell was not ineffective for failing to have an investigator interview the two witnesses before trial.

Petitioner failed to file a reply and so has not addressed the issue of procedural default. He has failed to show cause and prejudice or a miscarriage of justice to overcome the procedural default. Henson cannot rely upon *Martinez* to show cause and prejudice because "the rule announced in that case does not extend to claims of ineffective assistance of appellate counsel." *See Balducci v. Spatny*, No. 25-3186, 2025 WL 2743906, at *2 (6th Cir. July 15, 2025) (citing *Davila v. Davis*, 582 U.S. 521, 530-35 (2017)). The inmate also fails to show a miscarriage of justice because he has not presented new reliable evidence of actual innocence. For these reasons, Henson's first claim for relief is procedurally defaulted.

Notwithstanding Petitioner's procedural default of this claim, the claim also lacks merit. Respondent avers that Henson "did not present evidence as to the substance of what an additional interview would have uncovered." (D.E. 12 at PageID 714.) Respondent also contends that "there is no basis to conclude that counsel would have been granted access to interview the victims, even if he had asked, much less that a reasonable probability of a different trial result follows from counsel not interviewing the victims." (*Id.*)

In its order denying the inmate's state post-conviction petition, the post-conviction court cited and applied the clearly established Supreme Court precedent in *Strickland*. (D.E. 11-14 at PageID 583.) The post-conviction court credited trial counsel's testimony and accepted it as "adequate trial strategy and representation." (*Id.*) Mitchell testified that "in his opinion a pretrial interview with the witnesses would only have benefited the State and would have helped the State prep its witnesses." (*Id.* at PageID 581.) Counsel was familiar with the victims' testimony, and

12

"there was no evidence presented that the victims would have voluntarily spoken with counsel or that new information would have been developed." (*Id.* at PageID 582.) Notably, Petitioner "did not produce the testimony of either victim." (*Id.*) Considering his failure to produce purported additional testimony from either victim and counsel's explanation for why he did not seek to interview the victims, Henson could not show prejudice under *Strickland*. The post-conviction court's determination was not contrary to or an unreasonable application of clearly established Supreme Court precedent and was not based on an unreasonable determination of facts in light of the evidence presented. Accordingly, Henson's first claim for relief is procedurally defaulted, lacks merit, and is DENIED.

        C.        Ground II: Failing to Conduct a Thorough Pretrial Investigation

The inmate argues that counsel "failed to conduct an appropriate[] and thorou[g]h pre-trial investigation." (D.E. 1-1 at PageID 15.) According to Henson, counsel should have had an investigator interview "friends, relatives, and other people who knew the victims, to inquire into the victims' veracity and credibility." (*Id.*) Petitioner asserts that counsel could have discovered evidence that the victims often lied or "made up stories" and used this evidence to impeach their credibility at trial. (*Id.*)

On post-conviction appeal, the TCCA summarized the relevant testimony regarding Mitchell's performance:

> Counsel also responded to the Petitioner's allegation that he did not adequately investigate the names of witnesses given to him by the Petitioner. Counsel said that he contacted one of those witnesses listed, "Ms. Alexander," who recounted that she was the parent of a male child who was a prior victim of a sexual offense where the Petitioner was the Defendant. Counsel felt adamantly that this witness should not testify. Counsel noted that, at the time of the offense involving these two girls, the Petitioner was on the sex offender registry for sexual offenses against "Ms. Alexander's" son.
>
> The Petitioner also provided Counsel with the name of his ex-girlfriend as a witness. The Petitioner was uncertain how to contact his ex-girlfriend, and Counsel ultimately decided that the ex-girlfriend's testimony might do more harm than good

13

> because she could corroborate the victims' testimony about being at the Petitioner's home on the dates in question.
>
> The other name that the Petitioner provided to Counsel, Mr. Lynn Baker, was the Petitioner's employer. Mr. Baker only had "positive things" to say about the Petitioner, including that he was a "good worker." Counsel noted, however, that Mr. Baker was not in the home at the time of the incident. As such, Mr. Baker did not have information necessarily relevant to the offenses. Regardless, Counsel called Mr. Baker at trial and at sentencing. Counsel said he did not call the Petitioner's mother because she would clearly have been biased and she was not present at the time or place of the offenses.

*Henson*, 2022 WL 4115375, at *4. On cross-examination,

> Counsel testified that he met with the Petitioner five or six times out of court and five or six times before or after court appearances. Counsel said that he did not specifically recall the Petitioner asking him to talk to the Petitioner's mother. Counsel acknowledged that there was a discrepancy in dates of when the incident occurred, and his trial strategy included attempting to get the victims to testify the incident occurred on the date in the indictment that they were not with the Petitioner. He did not recall, however, that the Petitioner's mother could have testified to the potential discrepancy.
>
> Counsel said that, when he spoke with the Petitioner's mother, she focused primarily on disputes between the Petitioner and the mother of the children. Counsel agreed that the victims testified that the Petitioner's ex-girlfriend was present at the time when these offenses occurred. He said that he and the Petitioner determined that the ex-girlfriend worked at a local factory, but Counsel did not speak with her. Counsel testified he did not believe that she could corroborate the Petitioner's story regarding what had happened.
>
> Counsel said that he called the victims' mother at trial because she had testified that she did not believe the children at the time that they reported the abuse.

*Id.* at *4-5.

During the post-conviction hearing, Petitioner testified that "he told [Mitchell] to speak with his mother and several other people. Counsel did not indicate that he had done so. Counsel did tell him that the witness 'Ms. Alexander,' who was also [Henson's] sister, was not an appropriate witness because of the offense against her son, who was also [Henson's] nephew." *Id.* at *5. Petitioner "said that the victims had testified that there was a woman present in the home when the offenses occurred. He gave [Mitchell] the woman's name, and Counsel did not interview

14

her." *Id.* Henson "did not offer any of the witnesses that he said that [Mitchell] failed to interview." *Id.*

Respondent first argues that the inmate's claim for relief is procedurally defaulted because his theory of relief "differs from the theory advanced on state court appeal." (D.E. 12 at PageID 715.) Respondent states that the claim Henson raises in his § 2254 Petition "alleges a failure to investigate the victim[s'] credibility, but his claim in his state appeal alleged a failure to investigate a witness who might have corroborated his own account." (*Id.*)

In his state post-conviction petition, Henson asserted the same claim for relief that he now asserts in his § 2254 Petition. (D.E. 11-14 at PageID 563.) However, in his brief on post-conviction appeal, the inmate, through counsel, claimed that trial counsel's failure to call Samantha Campbell as a defense witness at trial amounted to ineffective assistance of counsel. (D.E. 11-16 at PageID 652.) Henson argued that Ms. Campbell "was at the house at the time the alleged incidents of sexual abuse occurred and thus could have provided crucial alibi testimony and corroborated the credibility of [his] testimony." (*Id.* at PageID 652.)

The Sixth Circuit "has held that the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) (citations omitted). Here, while Henson raised the same theory presented in his § 2254 Petition in his state post-conviction petition, he did not raise that broader theory in his brief on post-conviction appeal. However, the TCCA appears to have addressed the inmate's claim under his broader theory of relief, stating that on appeal, Henson "asserts that Counsel was ineffective for failing to interview potential witnesses before trial and for failing to call one of these potential witnesses to testify at trial." *Henson*, 2022 WL 4115375, at *5. Given that, the Court declines to conclude that Henson has procedurally defaulted his second claim for relief.

15

In any event, Petitioner's claim for relief also lacks merit. The TCCA cited and applied the clearly established Supreme Court precedent in *Strickland*. *Id.* at *6. The TCCA rejected Henson's argument, noting that he "failed to present the testimony of any potential witnesses at the post-conviction hearing. It has long been held that we cannot speculate on what the testimony of any potential witness might have been if introduced." *Id.* at *7. By failing to present testimony from potential witnesses at the hearing, Henson "failed to prove that Counsel was deficient by not calling any potential witness." *Id.*

In his federal habeas proceedings, Petitioner again fails to offer any evidence regarding the testimony of the potential witnesses and how this testimony would have been beneficial to his defense. *See Tinsley v. Million*, 399 F.3d 796, 810 (6th Cir. 2005) (affirming denial of an ineffective assistance claim based on counsel's failure to call witnesses where a petitioner did not "introduce [] affidavits or any other evidence establishing what they would have said"); *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[T]he testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." (footnote omitted)). The TCCA's determination was not contrary to or an unreasonable application of clearly established Supreme Court precedent and was not based on an unreasonable determination of facts in light of the evidence presented. Accordingly, Henson's second claim for relief lacks merit and is DENIED.

    D.      Ground III: Failing to Retain Medical Expert

The inmate contends that counsel "failed to retain a qualified medical doctor to conduct a physical rape examination on the two alleged victims, to determine whether or not there was any physical evidence that the victims had been 'penetrated' however slight." (D.E. 1-1 at PageID 15.)

16

First, this claim is procedurally defaulted for the same reasons that Henson's first ground for relief is procedurally defaulted. He fails to demonstrate cause and prejudice or a miscarriage of justice to overcome his procedural default of this claim.

In any event, defense counsel testified regarding his failure to retain a medical expert at the post-conviction hearing. The TCCA summarized:

> Counsel acknowledged that the Petitioner claimed that Counsel failed to retain a qualified medical doctor to conduct a physical rape examination of the two victims. Counsel noted that a nurse at Jackson General Hospital, Mary Cole, had conducted a rape examination on the children. Counsel said that Nurse Cole conducted what appeared to be an unbiased and thorough examination, and Counsel had the opportunity to cross-examine her. Further, the incident occurred in October 2016, and Counsel was retained in June of 2017. Therefore, he failed to see how a medical examination almost a year later would have been beneficial. Counsel said he reviewed the medical information with the Petitioner.

*Henson*, 2022 WL 4115375, at *4.

As noted above, in its order denying Henson's state post-conviction petition, the post-conviction court credited Mitchell's testimony and accepted it as "adequate trial strategy and representation." (D.E. 11-14 at PageID 583.) Considering counsel's explanation for why he did not retain a qualified medical expert, Petitioner could not show prejudice under *Strickland*. The post-conviction court's determination was not contrary to or an unreasonable application of clearly established Supreme Court precedent and was not based on an unreasonable determination of facts in light of the evidence presented. Accordingly, Henson's third claim for relief is procedurally defaulted, lacks merit, and is DENIED.

      E.      Ground IV: Failing to Conduct Meaningful Plea Negotiations

The inmate alleges that counsel "failed to enter into meaningful plea negotiations with the prosecution prior to trial, in an effort to secure a favorable plea offer for Petitioner." (D.E. 1-1 at PageID 16.) According to Henson, "[c]ounsel had no tactical reason not to attempt to secure a favorable plea agreement for [him]." (*Id.*)

17

First, this claim is procedurally defaulted for the same reasons that Henson's first and third grounds for relief are procedurally defaulted. Henson fails to demonstrate cause and prejudice or a miscarriage of justice to overcome his procedural default of this claim.

In any event, Petitioner's claim regarding plea negotiations wholly lacks merit. At the post-conviction hearing, Mitchell "testified that he attempted to get a plea offer from the State's attorney. Counsel said that he met with the State's attorney several times, always seeking to get a better offer, and he took the offer to Petitioner. The Petitioner declined the offer and chose to go to trial." *Henson*, 2022 WL 4115375, at *4.

When the inmate testified, he "made an unclear allegation that the State's attorney informed the jury during the trial that she and Counsel had 'made a deal the night before [trial].' He indicated that the State's attorney 'pranced' across the courtroom and indicated that she and Counsel had talked the night before and made a deal without the Petitioner's consent." *Id.* at *5. Mitchell "was recalled and testified that he and the State's attorney never made a deal before trial and that she had never so indicated in court." *Id.*

When asserting that counsel rendered ineffective assistance with respect to rejection of a plea offer, "[federal habeas petitioners] must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *See Missouri v. Frye*, 566 U.S. 134, 147-49 (2012). Henson fails to provide any evidence suggesting he would have accepted any plea offer proffered by the State. As demonstrated by the post-conviction hearing, Petitioner himself turned down any plea offer and chose to proceed to trial. Furthermore, Henson provided no evidence to support his conclusory allegation that Mitchell and the State's attorney "made a deal" without his consent.

For these reasons, Henson's fourth claim for relief is procedurally defaulted, lacks merit, and is DENIED.

18

For the foregoing reasons, Henson's § 2254 Petition is DENIED because three of his claims are procedurally defaulted and all of his claims lack merit. The Clerk is DIRECTED to enter judgment for Respondent.

VI.     APPEAL ISSUES

A § 2254 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2)-(3). A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the § 2254 Petition. Because any appeal by Henson does not deserve attention, the Court DENIES a COA.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed in forma pauperis in the appellate court. Fed. R. App. P. 24(a).

19

In this case, for the same reason it denies a COA, the Court CERTIFIES, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal in forma pauperis is therefore DENIED.[2]

IT IS SO ORDERED this 11th day of February 2026.

s/ J. DANIEL BREEN<br>
UNITED STATES DISTRICT JUDGE

---

[2] If Petitioner files a notice of appeal, he must also pay the full $605.00 appellate filing fee or file a motion to proceed in forma pauperis and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.